MIKE BRIGANTI vs. THE CONNECTICUT COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 8th—decided November 20th, 1934.

*Robert M. Wolfe* and *John Keogh, Jr.*, for the appellant (plaintiff):

*Walter A. Mulvihill* and *Edwin H. Hall*, for the appellee (defendant).

HAINES, J. There is no important dispute as to the facts of this case. The plaintiff on July 18th, 1933, entered the defendant's trolley car as a passenger while it was standing near the railroad station in Norwalk, and took a seat at the rear of the car on the right side. The car had been put into service on other runs from about a quarter before six that morning and the plaintiff entered it about eleven o'clock. The day was warm and the window by the seat taken by the plaintiff was open, the lower end of the sash being

raised from the sill approximately eighteen inches. The plaintiff rested his hand on the sill of the window and while the car was standing still, without any act on the part of anyone, the window slid down in its casement about twelve inches to within about six inches of the bottom sill when it stopped, and a piece of glass fell out and down onto the plaintiff's forefinger, cutting it deeply across the second joint, which has resulted in some limitation of flexion of the finger. There was no evidence of any defect in the glass of the window, or the sash or the casement or in the stops which held it when raised and secured it when closed, nor was there any evidence as to whether they were in working order or out of repair, or had been maliciously or otherwise tampered with, or whether the window had been opened at a proper height for the stops to catch and hold it, or whether it had been opened by a former passenger or some employee of the defendant. The glass in the window was a single sheet, heavier than the ordinary window glass, and about twenty by twenty-four inches in size. The portion which came out was about eight inches across, and in size was about one quarter of the whole sheet. The car had been in service earlier that morning and in use on the line for some years.

These are the essential facts upon which the plaintiff invoked the doctrine of *res ipsa loquitur* and claimed the right to have the case passed upon by the jury. Denying the applicability of the doctrine, the defendant moved for a directed verdict in its favor, and this was granted by the court. The defendant, in support of its contention, calls attention to the allegations of the complaint, viz.: "said injury was caused by the negligence of the defendant in that the defendant by its servant, agent and employee allowed said window to become in a defective and dangerous

condition so that it fell or dropped down causing the glass therein to break and injuring the plaintiff."

There are authorities which support the defendant's contention that the application of the doctrine is precluded where the plaintiff alleges a specific act of negligence as the cause of the injury, but the weight of authority is to the contrary and the latter is the position to which we have adhered in this State. *Firszt* v. *Capitol Park Realty Co.*, 98 Conn. 627, 642, 643, 120 Atl. 300.

The plaintiff now claims that the evidence shows his injury was caused not by the falling of the window but by the unexplained breaking of the glass, and that the doctrine of *res ipsa loquitur* applied for the reason that the glass itself, as distinguished from the window, was an instrumentality not subject in any way to the control of the plaintiff but was solely within the control of the defendant. The plaintiff's evidence was that the window suddenly dropped down, a distance of about twelve inches, to a point six inches from the lower sill, and stopped at that point. It is not now claimed there was any evidence of negligence on the part of the defendant which caused or permitted the window to fall. There was no evidence that the window or any of its parts or appliances or the glass itself was defective. The only reasonable explanation for the breaking of the glass was the jar caused by the sudden checking of the heavy window in its descent. This supports the original claim of the plaintiff that the falling of the window caused the glass to break, as set forth in that part of the complaint above quoted.

It is necessary, therefore, to consider the applicability of the doctrine of *res ipsa loquitur* on the basis of the unexplained fall of an open window in the car of a common carrier. A common carrier of passengers

for hire is required to use the utmost care for their safety which is consistent with the nature of the business, to guard them against dangers from any source which may naturally and reasonably be expected to occur, in view of all the circumstances and of the number and character of the persons with whom they will be brought in contact. Safe, sufficient and suitable vehicles for transportation must be provided, together with such servants for managing the same, and such reasonable arrangements therefor, as the highest care of a prudent man would suggest as necessary for a safe passage. *Murray* v. *Lehigh Valley R. Co.*, 66 Conn. 512, 518, 34 Atl. 506; *Belledeau* v. *Connecticut Co.*, 110 Conn. 625, 627, 628, 149 Atl. 127.

Doubtless this may account to some extent for the fact that the doctrine of *res ipsa loquitur* is invoked more frequently in actions against common carriers than in any other class of cases. 20 R. C. L., p. 188, § 157. The doctrine is well stated in 45 C. J. at page 1193, § 768: "Where the thing which causes the injury . . . is shown to be under the management of defendant or his servant and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

We have recently restated three conditions as a fair basis for the application of the doctrine, and the drawing of an inference that the defendant was negligent: "(1) that the situation, condition or apparatus 'must be such that in the ordinary instance no' injury would result 'unless from a careless construction, inspection, or user; (2) both inspection and user must have been at the time of the injury in the control of the party charged with neglect; (3) the injurious occurrence or

condition must have happened irrespective of any voluntary action at the time by the party injured.' " *Jump* v. *Ensign-Bickford Co.*, 117 Conn. 110, 121, 167 Atl. 90; *Schiesel* v. *Poli Realty Co.*, 108 Conn. 115, 122, 142 Atl. 812; *Stebel* v. *Connecticut Co.*, 90 Conn. 24, 26, 96 Atl. 171; Thayer, Evidence, 314; 4 Wigmore, Evidence (1st Ed.) § 2509.

In applying this test to the facts of the present case, we may treat the first and third of these conditions as fairly met. A window in a trolley car will not ordinarily fall when open unless it is carelessly constructed, inspected or used; and the fall of the window in the present case was without any voluntary action on the part of this plaintiff.

The second of the three conditions requires that the window must have been in the absolute and sole control of the defendant carrier. It is often difficult to determine the fact of sole control, as numerous conflicting decisions attest. Many cases of injury from falling windows and other objects in trolley cars and railroad cars, appear in the reports. It may fairly be said that the differing conclusions reached by the courts depend in large part upon variations in the facts. An examination of the cases cited by the plaintiff seems to us to confirm this view. *Pennifold* v. *St. Louis Public Service Co.* (Mo.) 59 S. W. (2d) 713; *Paling* v. *New York Central R. Co.* (N. J.) 146 Atl. 788; *Scilimbracca* v. *Central Ry. of New Jersey* (N. J.) 146 Atl. 665; *Russell* v. *Public Service Ry. Co.*, 104 N. J. L. 34, 139 Atl. 322; *Orms* v. *Traction Bus Co.*, 300 Pa. St. 474, 150 Atl. 897.

In the present case the window was constructed with stops for the purpose of holding it either closed or open at various heights as the passenger might desire. The day was warm and the car had been on a previous run before the plaintiff entered it. Whether

the window was opened by an employee of the defendant or by a passenger on the previous run, is not known. It might have been either, with the probability under the circumstances that it was opened by a passenger. It was obviously subject, when the plaintiff arrived, to his control; he was free to close it or not as he preferred, and he chose to leave it open. It does not appear that the defendant exercised any control over the window or over the plaintiff's choice in the matter. We find no better statement of a situation of this kind than that in a case cited in the trial court's memorandum of decision, wherein the conclusion was stated that the user of the window was not under the immediate management of the defendant but was in the control of the plaintiff and added: "It is ordinarily left to the passenger to determine whether a window shall be opened or closed, and the plaintiff saw fit as a matter of comfort or convenience not to interfere with the window as she found it when she entered the car. It is very probable that it was raised by the person who last occupied the seat and had not been made secure by the safety device. Under these circumstances it is impossible to say whether the fall was attributable to any defect in the construction or to the failure of the person who raised it to secure it in the usual way. It may be attributable to either with equal certainty, and the proximate cause of the injury cannot be determined. The falling of the sash was evidently an event which proceeded from an unknown cause and must be ascribed to accident or casualty." *Saunders* v. *Norfolk & Western Ry. Co.,* 185 N. C. 289, 291, 117 S. E. 4, 29 A. L. R. 1258. The following cases, among others, adopt the reasoning upon which the conclusion was reached in the above citation and sustain our ruling in the present case that the doctrine of *res ipsa loquitur* does not apply:

*Murphy* v. *Boston Elevated Ry. Co.,* 229 Mass. 33, 118 N. E. 191; *Faulkner* v. *Boston & Maine Railroad,* 187 Mass. 254, 255, 72 N. E. 976; *Strembel* v. *Brooklyn Heights R. Co.,* 96 N. Y. Sup. 903; *Eaton* v. *New York Central & H. R. R. Co.,* 195 N. Y. 267, 88 N. E. 378; *Bleiwise* v. *Pennsylvania R. Co.,* 81 N. J. L. 160, 78 Atl. 1058, 1059; *Boucher* v. *Boston & Maine Railroad,* 76 N. H. 91, 79 Atl. 993.

There is no error.

In this opinion the other judges concurred.